THEODOR HEINRICH, The (JANSEN v.).
  See Case No. 7,215.

THEUS, Ex parte.  See Case No. 5,420.

## Case No. 13,881.
### THIBAULT et al. v. DE BASAVILBASO.
[Baldw. 9.] [1]

Circuit Court, E. D. Pennsylvania.  Oct. Term, 1828.

ACTIONS — ELECTION — CONTRACT — TORT — INSOLVENCY—DISCHARGE—ESTOPPEL.

The plaintiff sold to the defendant certain goods in Philadelphia, and at the same time delivered to him other goods to be disposed of at Havanna, on account of the plaintiff.  The defendant took all the goods to Havanna and there pledged them as a security for money advanced to him; on his return to Philadelphia, this suit was commenced against him.  This action was on the case, but no declaration was filed.  So it stood when a judgment was entered generally; afterwards, by an agreement between the parties, the judgment was confessed on the record to be for a certain sum, and notes were taken for the amount, payable at distant periods, and execution stayed accordingly.  After these arrangements were made, the defendant was duly discharged by the insolvent laws of Pennsylvania, and after his discharge, the plaintiff filed his declaration in the above suit in trover, and charged the defendant with a tortious conversion to his own use, of the goods in both invoices; the alleged tort was the pledging of the goods at Havanna.  If on these facts the plaintiff had originally an election to bring his suit on the contracts or for a tort, yet as it clearly appears by the whole course of proceeding that he had proceeded upon the contracts, he cannot, by filing under these circumstances a declaration in trover, turn his suit into one for a tort.  The contract and promises having been made in Philadelphia, by persons resident here, and to be executed here, the rule for the exoneretur was made absolute.

Sur rule to show cause why an exoneretur should not be entered on the bail piece; the defendant [P. De Basavilbaso] having been discharged by the insolvent laws of Pennsylvania.

BY THE COURT.  On the 29th of March, 1828, the plaintiffs [Thibault & Bros.] sold to the defendant a quantity of jewellery amounting to 3,172 dollars, and on the same day delivered to him other jewellery to the amount of 2,160 dollars, which by an entry on the plaintiffs' books are declared to be "goods sent by Mr. Basavilbaso to be sold for Thibault & Bros., or to be returned, if they are not sold for the invoice prices; Mr. Basavilbaso to pay all expenses, and run all risks, for the profits arising from the same, over and above the invoice price."

On the 1st of April following, the plaintiffs received from the defendant a draft and note amounting together to 3,172 dollars, and in the receipt given for them they agree, that should any part of the jewellery, per invoice of the same date, be returned to them within six months, in like good order, to receive the same on account of the above mentioned draft and note; all the goods thus obtained from the plaintiff, that is the invoice of 2,160 dollars as well as that of 3,172 dollars were shipped to Havanna by Vezin & Von Lon-

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

gerke, merchants of this city, consigned to the defendant, by whom the insurance and all other expenses were paid; he probably went in the same vessel with the goods to Havanna, where he received the jewellery, and deposited both invoices into the hands of Messrs. A. Morales & Co., merchants of Havanna, as security for 2,000 dollars advanced to him on account of the said jewellery. On the 7th of October, 1828, the defendant having retu ned, this suit was brought against him, generally, in case, and bail demanded in the sum of 5,000 dollars, but no declaration was filed. On the 22d of December, 1828, an agreement was signed by the plaintiffs' attorney, and by the defendant confessing judgment for the sum of 1,700 dollars to be paid by equal instalments, in one, two and three years, execution to be stayed accordingly, and the judgment was entered on the same day conformably to the agreement, no declaration being yet filed. This sum of 1,700 dollars is the balance stated to be due from defendant to plaintiffs on an account which is dated on the same 22d of December: and on the same day the plaintiffs gave a receipt to the defendant, for three notes bearing date at Philadelphia, on the 20th day of December, 1828, and payable severally in one, two and three years, and declared to be "for balance of 1,700 dollars due them on account." As these notes bear a date two days antecedent to that of the account on which this balance is struck, they must either have been antedated, or the amount must have been settled by the parties before the account was actually stated in form. They are, however, expressly declared to be for the "balance due them on account," and however we may connect them with the judgment, whether the judgment was given to secure them, as the defendant asserts, or they were a means of obtaining satisfaction of the judgment, as the plaintiffs contend, still we cannot doubt that the sum or debt for which both the judgment and the notes were given, was the balance of 1,700 dollars, settled by the parties in the account of 22d December, 1828; the dates are the same; and where was this sum of 1,700 dollars, mentioned in the judgment, in the notes and in the receipt given for the notes, found and ascertained to be the amount of the debt due to the plaintiffs, unless in the account settled on the 22d of December, 1828?

On 31st March, 1829, three months after these arrangements were completed, the plaintiffs paid to Morales & Co. the money, with additional charges, amounting together to 2,400 dollars, for which the jewellery had been pledged by defendant; and by referring to the account of 22d of December, it will be seen that a credit is allowed to the defendant, of 4,200 dollars, amount of jewellery at Havanna. and a charge is made against him for the money which had been advanced to him on the jewellery by Mo-

rales & Co., with the expenses; by which it is evident that on the settlement made on the 22d December, the plaintiffs assumed the debt due from defendant to Morales & Co., and that the whole goods deposited by defendant, as well those which were absolutely purchased of the plaintiffs as those which were sent not to be sold under the agreement mentioned, were passed to the plaintiffs.

All matters having been thus arranged between the parties, the balance due to the plaintiffs ascertained, notes given for the payment of it, and a judgment entered on the suit according to their agreement and in conformity with the notes; the formality of filing a declaration, which surely was incumbent upon the plaintiffs, and of course the neglect was theirs, had never been attended to. On 29th October, the defendant having complied with the requisitions of the law, was duly discharged as an insolvent debtor, by the court of common pleas of Philadelphia county. On November 13, 1829, the plaintiffs' attorney filed his declaration, in which he charges the defendant, as his cause of action in this suit, with having converted and disposed of the jewellery contained in both invoices, to his own use; and the action which until this time, nearly eleven months after the judgment, had stood on the docket with the equivocal description of an action on the case, now assumes the character of an action of trover, for a tortious use or conversion of the property of the plaintiffs at Havanna, in the island of Cuba.

All the contracts between these parties, in relation of these goods, were made at Philadelphia, some before the goods were shipped and some after return of defendant to this country; and, of course, if the judgment, which is now the debt of the defendant to the plaintiffs, is to be considered as a judgment rendered in an action of assumpsit, or on the contract and promises between the parties, the discharge by the insolvent laws of the state will operate upon it; but if the transactions at Havanna must be taken as the ground of the suit and its judgment, a different result would follow; and the discharge of the defendant will not avail him against it. Whether by the peculiar agreement under which the jewellery contained in the invoice of 2,160 dollars was delivered to the defendant, to be taken to Havanna entirely at his expense, and at his risk—to be indeed at his risk after their arrival at Havanna, whether sold or not sold, with a full right to all the profits that might be made on them above the invoice price, whether such an agreement did not place these goods entirely at the disposal of the defendant, he being always accountable for the invoice price—or, at least, whether they were not placed so indefinitely in his power, that the use he made of them in common with his own, could not be considered to be a wrongful disposal of them, a tortious unauthorized conversion of them to his own use, and make him responsible in an action

of trover, I do not find it necessary to decide. If on the whole transaction the plaintiffs had an election to proceed against the defendant on their contract, or on the tort, by assumpsit or in trover, and I am well satisfied, that, in point of fact, it clearly appears they made their election, that they did bring their suit and enter their judgment on the promises and not on the wrong; it cannot be permitted to them to undo what they have so solemnly done, on an unexpected turn of events, to give a new character to all their proceedings; to throw up as nugatory, the settlement deliberately made with the defendant—the notes received from him in payment of the amount agreed to be due, which have no possible reference to or connection with any wrong, but a clear and direct connection with the settled account, and to set up a claim for damages arising from a tort committed at Havanna—to allege that the judgment rendered, in an evident connection with the above mentioned account and notes, was in truth a judgment confessed for damages for the alleged wrong at Havanna.

The whole proceeding and documents show, beyond the reach of doubt, that the judgment was given for an amount found due on the whole dealings between the parties, comprehending not only the goods said to have been converted, but those also which were absolutely sold to the defendant and subject wholly to his disposition, and even other articles not found in either of the invoices now in controversy. I cannot raise a question that this judgment was taken on this settlement of all matters between the parties, and cannot be applied to the wrong said to have been committed by defendant with the goods which form but a part of the account settled; and if as to those goods the plaintiffs can have a right of action in trover, it was merged or surrendered on their subsequent dealings and agreements with the defendant. By those they consented to take back to themselves the property they allege had been illegally converted by defendant to his own use: and further, to charge themselves with the payment of the money he had taken up on them; they have assumed the debt due by the defendant to Morales & Co., and they have in consideration of this obtained a right to receive from Morales & Co., not only the goods which they say belong to them, but a larger amount of other goods to which they had no claim. They have adopted the whole transaction between the defendant and Morales & Co., and this arrangement was afterwards fully completed and carried into effect, by their paying the amount due to Morales & Co., and receiving from them all the goods deposited by the defendant. Their right of recovery in an action of trover was limited to the amount of the invoice of 2,160 dollars; but they have received in consequence of their agreement or compromise with the defendant the sum of 4,200 dollars, and still retain it; can they be permitted to have the whole benefit of this arrangement and afterwards to repudiate a part of it? May they now affirm the part which has been so beneficial to them, and reject the rest? Their debt or claim upon the defendant, under both invoices, was 5,332 dollars. This they have fortunately reduced to 1,700 dollars by the voluntary delivery to them by the defendant of goods to which they do not and cannot pretend a claim, and shall they now keep these goods and reject the agreement on the faith of which they obtained them? Was this the understanding of the parties, or any of them, when the arrangement was made and the judgment confessed? If this were intended to be a judgment in an action of trover, for the wrongful conversion of goods of the value of 2,160 dollars, how were the damages put at 1,700 dollars, and who can say that this amount is due on the invoice of the goods actually sold, or on that of the goods sent to be sold for the plaintiffs? It is undoubted that the goods said to have been converted have actually been returned to the plaintiffs; and although they did pay upwards of 2,000 dollars to obtain them, yet they also obtained other goods of a greater value than all they paid.

Being entirely satisfied that the judgment entered in this case, and against which the bail in the action seeks to be relieved by reason of the discharge of the defendant under the insolvent laws of this state, is a judgment confessed and rendered on assumpsit, or contracts and promises made at Philadelphia, and not in a foreign state, I direct that the rule for an exoneretur be made absolute.